# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAFEYETTE WALTON (#R-45503), | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 12 C 5905 |
| | ) |
| | ) Judge Harry D. Leinenweber |
| COOK COUNTY MUNICIPALITY, | ) |
| TOM DART, and SUPERINTENDENT | ) |
| JOHN DOE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Lafeyette Walton (hereinafter, "Walton" or "Plaintiff"), an inmate at Big Muddy River Correctional Center, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Walton contends that Defendants Cook County and Cook County Sheriff Tom Dart (hereinafter, "Defendants") have instituted a policy at the Cook County Jail in violation of his constitutional rights that led to him contracting methicillin resistant staph aureus (hereinafter, "MRSA"). This matter is before the Court for ruling on Defendants' motion for summary judgment [Doc. #19]. For the reasons stated in this order, the motion for summary judgment is granted.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to

the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

**Local Rule 56.1 (N.D. Ill.)**

Defendants filed statements of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their motion for summary judgment, Defendants included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [Doc. #20], as required by Local Rule 56.2. That notice clearly explained the requirements of the Local Rules and warned Plaintiff that

a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have ... repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, Plaintiff failed to file a response to Defendants' statements of uncontested facts. A motion for summary judgment "requires the responding party to come forward with the evidence that it has--it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted). As Plaintiff has failed to do so, Defendants' proposed undisputed facts are deemed admitted. *See Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008); L.R. 56.1(b)(3)(B).

Because Plaintiff is proceeding *pro se*, the Court will consider the factual assertions he makes in his response to Defendants' motion, but only to the extent that they are adequately supported by reference to the record as required, or to the extent that Plaintiff could properly testify about the matters at trial – that is, only with respect to those facts within his personal knowledge. See FED. R. EVID. 602.

**Facts**

Lafeyette Walton ("Plaintiff") was, at the time of filing the instant action, a pre trial detainee at the Cook County Department of Corrections ("CCDOC") from April 5, 2012. (See Def. Statement of Facts ¶ 1). Plaintiff names as Defendants Tom Dart, the Sheriff of Cook County, and Cook County, itself. (See Plaintiff's complaint).

Plaintiff filed a complaint on July 26, 2012, alleging violations of 42 U.S.C. § 1983 of the Civil Rights Act against Defendants. (See Def. Statement of Facts ¶ 3). Plaintiff's complaint alleges an official capacity claim of unconstitutional conditions of confinement. *Id*. In his complaint, Plaintiff alleges that unsanitary conditions in Division 1 caused him to contract methicillin resistant staphylococcus aureus (hereinafter, "MRSA"). (See Def. Statement of

Facts ¶ 4). Plaintiff alleges that Division 1 had no power washes or anything to prevent MRSA from spreading. *Id*.

Plaintiff was admitted to Cook County Jail on April 5, 2012, and was assigned to Division 1. (See Def. Statement of Facts ¶ 5). While Plaintiff was in Division 1, he displayed no signs or symptoms of MRSA. (See Def. Statement of Facts ¶ 6).

Division 1 had policies and procedures in place throughout the time period in question, including a Divisional Sanitation Plan (General Order 24.11.1.0). (See Def. Statement of Facts ¶ 8). Earl Tucker was assigned as Lieutenant on the day shift in Division 1 at the CCDOC during the time in question and had personal knowledge of the policies and procedures in place regarding sanitation from before April 4, 2012, up to and through July 26, 2012. (See Def. Statement of Facts ¶ 7). All detainees are responsible for maintaining the cleanliness of their cells. (See Def. Statement of Facts ¶ 9). They are provided with cleaning supplies and equipment throughout the day. *Id*. They may access the cleaning supplies through their tier officer any time that they are out of their cells. *Id*.

The Divisional Sanitation Plan governs sanitation of common areas. (See Def. Statement of Facts ¶ 10). On each day shift (7 a.m. to 3 p.m.), an assigned sanitation officer selects detainees as sanitation workers. *Id*. The detainees are assigned different cleaning tasks and provided with materials and equipment needed to complete the task. *Id*. The sanitation officer and crew go through and clean all common areas including spraying down the areas with disinfectants and collecting garbage. (See Def. Statement of Facts ¶ 11). Additionally, cells and

common areas are power washed at least two times per month, depending on availability of equipment and necessity of power washing. (See Def. Statement of Facts ¶ 12).

On June 17, 2012, Plaintiff began experiencing bowel obstruction while housed in Division 1. (See Def. Statement of Facts ¶ 14). The next day, June 18, 2012, Plaintiff was admitted to Stroger Hospital and underwent emergency surgery on his stomach. *Id*. Plaintiff suffered no wounds in Division 1, only the bowel obstruction that led to him being taken to Stroger Hospital. (See Def. Statement of Facts ¶ 13).

The surgery resulted in a ten-inch wound that the doctors closed with twenty staples. (See Def. Statement of Facts ¶ 15). Plaintiff remained at Stroger Hospital for approximately two weeks, recovering from surgery. (See Def. Statement of Facts ¶ 16). On July 1, 2012, Plaintiff's staples were removed, one day prior to his discharge from Stroger Hospital. *Id*.

On July 2, 2012, Plaintiff was transferred from Stroger Hospital to Cermak Division 8, 3 West, the Cook County Jail Medical Unit for post-operative monitoring. (See Def. Statement of Facts ¶ 17). Plaintiff believes that he received proper medical care while at Cermak, consisting of stool softeners and pain medication while on 3 West, Medical Unit. *Id*. Plaintiff remained at Cermak for one week, from July 2, 2012 until July 9, 2012. *Id*.

Within twenty-four hours of being transferred on July 2, 2012, from Stroger Hospital to Cermak Division 8, 3 West, Medical Unit, Plaintiff's stomach began "leaking" from his wound. *Id*. Plaintiff notified Cermak staff of his stomach leakage, and a doctor tested the discharge surrounding the open wound. (See Def. Statement of Facts ¶ 20). Plaintiff's wound was then dressed with gauze and tape. *Id*.

Dr. Defuniak has been employed as a doctor at Cermak since 2003. (See Def. Statement of Facts ¶ 18). He reviewed Plaintiff's medical records, and was personally familiar with the treatment administered to Plaintiff related to the manifestation of (MRSA). *Id*. Dr. Defuniak personally examined Plaintiff on July 2, July 3, and July 5, 2012, in the infirmary where he presented for checks on his postoperative recovery. (See Def. Statement of Facts ¶ 19).

On July 5, 2012, Dr. Defuniak noted some discharge from the incision wound, cultures were taken and patient was prescribed an antibiotic treatment. *Id*. Cultures subsequently showed the organisms to be methicillin resistant staph aureus (MRSA) and pseudomonas. (See Def. Statement of Facts ¶ 21). Both organisms responded to the antibiotic prescribed, and the infection was resolved within one week of treatment. *Id*.

On July 9, 2012, a doctor at Cermak notified Plaintiff that he had MRSA. (See Def. Statement of Facts ¶ 22). MRSA colonization is common in the community as well as hospital settings. (See Def. Statement of Facts ¶ 23). Colonization describes when a person carries the bacteria but shows no clinical signs or symptoms of infection. *Id*. People that are colonized with MRSA remain asymptomatic until the organism causes an infection. *Id*. An infection often occurs at the sites of visible skin trauma, such as incisions, cuts and abrasions. *Id*. In Plaintiff's case, his MRSA infection occurred at the site of the incision for his bowel obstruction removal surgery at Stroger Hospital. *Id*.

On July 9, 2012, Plaintiff was transferred from Cermak to Division 10, Tier 4-B. (See Def. Statement of Facts ¶ 25). On July 11, 2012, Plaintiff filed a grievance for lack of medication in Division 10. (See Def. Statement of Facts ¶ 26). On July 12, 2012, Plaintiff filed

a second grievance for lack of medication in Division 10. *Id*. On July 25, 2012, Plaintiff filed a third grievance, which was ultimately treated as a request for assistance with obtaining medication. *Id*.

John Mueller is employed at the CCDOC as the Deputy Director of Inmate Services. (See Def. Statement of Facts ¶ 27). Part of his duties as Assistant Administrator is to assist in the administration of the CCDOC detainee grievance process. *Id*. He is familiar with the general orders, rules, regulations, policies, custom and practices of the detainee grievance process. *Id*. The CCDOC "Inmate Grievance Procedure" General Order (G.O.) 11.14.5 governs the administrative grievance process. (See Def. Statement of Facts ¶ 28). The "Inmate Grievance Procedure" was available to all inmates in 2012 and requires that an inmate properly file a grievance and appeal the grievance before filing a lawsuit. *Id*.

Each grievance that is processed in CCDOC must be entered into the CCDOC Master Grievance log book or database. (See Def. Statement of Facts ¶ 29). The inmate's name and identifying number are entered into the logbook or database. *Id*. The CCDOC Master Grievance log book and database are kept in the ordinary course of business. *Id*. A thorough review of the grievance logbook for the dates of April 5, 2012 to July 26, 2012 for any grievances filed by Plaintiff revealed that Plaintiff did not file any grievances pertaining to cleanliness in Division 1 or alleging contracting MRSA from conditions in Division 1. (See Def. Statement of Facts ¶ 30).

**Discussion**

I.      **Failure to Exhaust**

Initially, Defendants argue in their motion for summary judgment that Plaintiff failed to exhaust administrative remedies prior to filing suit. The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner*, 531 U.S. 956 (2001). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001).

An inmate must comply with the rules established by the State [or, in this case, county] with respect to the form and timeliness of grievances. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002) (where prisoner failed to avail himself of the administrative grievance process in a timely manner, he was barred from pursuing relief in federal court). Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also Woodford v. Ngo*, 548 U.S. at 90.

To exhaust remedies under § 1997e(a), a prisoner "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. The purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before a federal suit is initiated. *See Porter v. Nussle,* 534 U.S. 516, 524-25 (2002).

Defendants argue in their motion that Plaintiff failed to submit any grievance regarding the claim raised in this case. Although he submitted three grievances after his surgery, and after contracting MRSA, the evidence shows that the subject of those grievances was the medical care he was receiving and the failure of medical personnel to provide him with sufficient pain medication. There are no other grievances in the record. Although Plaintiff testified in his deposition that there were additional grievances, and that he would send them to counsel for Defendants, they are not part of the record. See Defendants' Exh. A, p. 77: 1 to p. 79: 14. Plaintiff also testified that those grievances were also likely about his medical care after he was diagnosed with MRSA, not the alleged conditions that led to him contracting MRSA.

In short, while MRSA is mentioned in the grievances that are part of the record in this case, not one of those grievances complain of the conditions of confinement that Plaintiff alleges resulted in him contracting it. The purpose of the exhaustion requirement is to allow inmates to put the prison or jail on notice of the problem so they can correct it internally, prior to initiating suit. *see Porter,* 534 U.S. at 524-25; *see also Jones v. Bock*, 549 U.S. 199, 219, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (noting that exhaustion allows "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent

complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record"); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The record before the Court establishes that Plaintiff submitted no grievances relating to the conditions of confinement that he alleges led to him contracting MRSA. Accordingly, as Plaintiff has failed to rebut Defendants' exhaustion argument, Defendants are entitled to dismissal because Plaintiff failed to exhaust his administrative remedies prior to filing suit.

## II. Official Capacity Claims of Unconstitutional Conditions of Confinement.

Even if Plaintiff had exhausted his administrative remedies prior to filing suit, the record contains no evidence that Defendants enacted or enforced policies that subjected him to unconstitutional conditions of confinement. The Eighth Amendment, as applied to the various states through the Fourteenth Amendment, requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted).

Plaintiff's claims in this case are against Defendants in their official capacities. Such claims are treated as claims against the governmental entities for which they are agents. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (*citing Hafer v. Melo*, 502 U.S. 21, 25 (1991)). For Sheriff Tom Dart, as an elected official with decision-making authority over the jail that is independent of Cook County, an official capacity claim against him is considered to be one against the Sheriff's Office. *See DeGenova v. Sheriff of DuPage County*, 209 F.3d 973 (7th Cir. 2000); *see also Aleman v. Dart*, No. 09 C 4069, 2010 U.S. Dist. LEXIS 124088, 2010 WL 4876720 *7.

When the Court completed its initial review on Plaintiff's complaint, pursuant to 28 U.S.C. § 1915A, out of an abundance of caution, and giving Plaintiff every benefit of the doubt, as it must, the Court allowed Plaintiff to proceed against both Tom Dart and Cook County on his official capacity claim. The Court also notes that while Plaintiff named a John Doe Superintendent, he never amended his complaint to name the John Doe or to raise any individual capacity claim against any Defendant. Accordingly, the Court decides this motion as to the only claim: an official capacity claim against Tom Dart for unconstitutional conditions of confinement.

Actions against individual defendants in their official capacities are treated as suits against the government entity itself. *Walker v. Sheahan,* 526 F.3d 973 977 (7th Cir. 2008). A municipality or local governmental entity cannot be held vicariously liable for the actions of its employees. *Montano v. City of Chi.*, 535 F.3d 558, 570 (7th Cir. 2008). In order to establish an official capacity claim, Plaintiff must prove (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well settled as to constitute a custom or usage with the force of law, even though no express municipal policy or law authorized the practice; or (3) a constitutional injury that was caused by an official with final policymaking authority. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000).

Plaintiff's official capacity claim involves what he alleges were unconstitutional conditions of confinement. The Fourteenth Amendment's due process clause prohibits any type of punishment of a pretrial detainee. *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996). To successfully plead a constitutional violation for the conditions of his confinement, Plaintiff

must show that his conditions amounted to punishment, and that Defendants acted with deliberate indifference, which is more than negligence. *Tesch v. County of Green Lake*, 157 F.3d 465, 473 (7th Cir. 1998); *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998). A court should consider whether the conditions of confinement are imposed with an intent to punish, or pursuant to a legitimate administrative purpose. *Tesch*, 157 F.3d at 473-74; *Smith v. Mangrum*, Case No. 94 C 50180, 1996 U.S. Dist. LEXIS 15802 (N.D. Ill. Oct. 21, 1996).

Conditions of confinement will be considered punishment when the conditions inflicted on a plaintiff are objectively severe and imposed with intent to punish or deliberate indifference to the prisoner's discomfort. *Wilson v. Seiter*, 501 U.S. 294 (1991); *Tesch*, 157 F.3d at 472-73. To show deliberate indifference, a plaintiff must show that defendants were aware of a substantial risk of injury to the plaintiff, but failed to take appropriate steps to protect him from a known danger. *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002).

According to the record before the Court, Plaintiff cannot establish that Defendant Dart established or implemented a policy that violated his constitutional rights. The evidence shows that the Cook County Jail, at the time in question, had in place a sanitation policy. The evidence also indicates that Division 1, where Plaintiff was housed, had it's own sanitation plan in place during the relevant time period. Under the sanitation plans, as they were implemented, Cook County detainees are responsible for maintaining the cleanliness of their cells, and are provided with cleaning supplies and equipment, during any given day. With regard to maintaining cleanliness of common areas, the assigned sanitation officer selects detainees to execute various cleaning tasks and provides materials and equipment necessary to complete the various cleaning

assignments, including spraying down areas with disinfectant and removal of garbage. Cells and common areas are also power washed twice a month.

The uncontested evidence also indicates that Plaintiff had no wound while housed in Division One, and the wound that became infected with MRSA, was the result of the surgery performed at Stroger Hospital to correct a bowel obstruction, requiring twenty staple to close. After the surgery, Plaintiff remained in the hospital for two weeks. His staples were removed on July 1, 2012, and he was released from the hospital. Then Plaintiff was transferred to Cermak, the medical unit at the Cook County Jail. He remained there for another week. During that week, his wound became infected with MRSA. Plaintiff was treated with antibiotics, and the infection was cured within a week.

Dr. Defuniak, reviewed Plaintiff's medical records, and provided an affidavit uncontested by Plaintiff. In it he opines that MRSA colonization is common in hospital settings. He further testified that colonization describes when a person carries the bacteria but shows no sign or symptoms of infection. Patients remain asymptomatic until the bacteria causes infection. Infections usually occur at the site of skin trauma, such as incisions, cuts and abrasions. In Plaintiff's case, the infection occurred at the site of the incision from the surgery he received at Stroger Hospital to treat his bowel obstruction.

The Court concludes that no reasonable jury could find that Defendant Dart created or implemented a policy leading to unconstitutional conditions of confinement in regard to Plaintiff contracting MRSA. Accordingly, Defendants' motion for summary judgment is granted and this case is dismissed.

**Conclusion**

For the reasons given, Defendants' motion for summary judgment [Doc #19] is granted. The Clerk is directed to enter judgment in favor of Defendants pursuant to Fed. R. Civ. P. 56. The case is terminated.

If Plaintiff wishes to appeal this final order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, he may also be assessed a "strike" under 28 U.S.C. § 1915(g). Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

Date: 3/7/2014 _____
Harry D. Leinenweber
United States District Judge